UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIVONE ANTOINE RICE,

Plaintiff,

v.

UNKNOWN BROWN et al.,

Defendants.

Case No. 1:25-cv-1596

Hon. Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

**Discussion**

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events

about which he complains occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the "ICF Mail Room," the "ICF Business Office," and the following ICF staff: Mail Handler Unknown Brown, "Account Teck" Scott Koster, and Resident Unit Manager Unknown Reed. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on January 3, 2025, he gave nonparty "PC L. Donston expedited legal mail disbursements"[1] that included a complaint, exhibits, and a $405 filing fee for a United States District Court case, as well as documents and a $20 filing fee for a case in the "Ingham County Circuit Court." (*Id.*, PageID.3.) Four days later, Plaintiff "started sending several kites" to Defendants Reed, "Business Office," and "Mail Room," asking why his legal mail and filing fee had not been processed. (*Id.*)

On January 14, 2025, Plaintiff gave Defendant Reed all his original documents related to the "Ingham County Circuit Court" case so "the legal writer" could assist Plaintiff in writing a brief. (*Id.*, PageID.5.) On January 16, 2025, Plaintiff asked Defendant Reed about the return of these documents, and Defendant Reed told Plaintiff that he "will give [Plaintiff] the[] documents back after your deadline is over[.]" (*Id.*) Defendant Reed also told Plaintiff that "this should be a lesson to stop trying to sue MDOC," and that Defendant Reed would make sure that Plaintiff "will never get any legal writer assistance" while Plaintiff was at ICF. (*Id.*)

On February 3, 2025, Plaintiff received two expedited legal mail disbursements, which stated that his legal mail had been sent on January 3, 2025, but that the filing fees were not sent. (*Id.*, PageID.3.) On February 4, 2025, Plaintiff sent mail to the United States District Court and the "Ingham County Circuit Court" stating that the MDOC was interfering with his legal mail and

---

[1] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

that "the business office and Account Teck are not processing [his] filing fee[.]" (*Id.*) Two days later, Plaintiff sent another letter to the United States District Court explaining that the "MDOC business office and account teck are actively interfering with the mail room by not processing [his] filing fee for $405.00." (*Id.*) On February 7, 2025, Plaintiff gave nonparty "PC Conron" an expedited legal mail disbursement with Plaintiff's filing fee for the United States District Court case. (*Id.*)

On February 10, 2025, Plaintiff received an "expedited legal mail disbursement," which stated that Defendant Koster had sent a $405 check for the filing fee in Plaintiff's United States District Court case. (*Id.*) On February 14, 2025, Plaintiff received an "expedited legal mail disbursement from [Defendant] Koster sending a check for $20.00 filing fee to the clerk of the Court for Ingham County Circuit court." (*Id.*) That same day, Plaintiff received a kite response from "the Business Office" that said: "Both checks have been mailed, no deadlines were missed." (*Id.*)

Further, Plaintiff alleges that on several occasions between February 12, 2025, and August 12, 2025, nonparty sergeants delivered "legal mail" to Plaintiff that had been opened outside of Plaintiff's presence. (*Id.*, PageID.4.) On one of those occasions, the nonparty sergeant told Plaintiff that he had received the mail from the mail room like that. (*Id.*)

Based on the foregoing allegations, Plaintiff asserts the following claims: First Amendment and Fourteenth Amendment claims of interference with the right to access the courts, and First Amendment mail interference and retaliation claims. Plaintiff seeks declaratory relief, injunctive relief, and monetary damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**III. Claims Against "ICF Mail Room" and "ICF Business Office"**

Plaintiff names as Defendants in this matter "ICF Mail Room" and "ICF Business Office." (Compl., ECF No. 1, PageID.2.)

Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978). But neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); P*arker v. Mich. Dep't of Corr*., 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). And, obviously, because ICF is not an entity separate from the MDOC, it is not a "person" under § 1983 either. *See, e.g., Tinney v. Detroit Reentry Center*, No. 2:19-CV-10894, 2020 WL 4334964, at *2 (E.D. Mich. July 28, 2020) (stating "[a] state prison facility is not a person . . . capable of being sued under § 1983"); *Ward v. Healthcare Clinic*, No. 16-10646, 2016 WL 3569562, at *1 (E.D. Mich. July 1, 2016) (same). "Similarly, the ICF Mailroom is not a 'person' acting under color of state law." *Spirdione v. Unknown Party #1*, No. 1:24-cv-741, 2025 WL 88101, at *3 (W.D. Mich. Jan. 14, 2025).

Therefore, Plaintiff has failed to state a claim against "ICF Mail Room" or "ICF Business Office" upon which relief may be granted, and the Court will dismiss all claims against these Defendants.

**IV. Claims Against Defendant Brown**

Plaintiff names Defendant Mail Handler Brown as a Defendant in this matter. (Compl., ECF No. 1, PageID.2.) In the body of his complaint, Plaintiff alleges in conclusory manner that Defendant Brown committed various constitutional violations, (*id*., PageID.6), but Plaintiff does not present any factual allegations about any actions taken by Defendant Brown. (*See id*., PageID.3–5.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

Here, Plaintiff does not present any factual allegations about the actions taken by Defendant Brown. (*See* Compl., ECF No. 1, PageID.3–5.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). And, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). In his complaint, Plaintiff refers to "the mail room staff," but those allegations are insufficient to show that Defendant Brown was personally

involved in the alleged violations of Plaintiff's constitutional rights. (Compl., ECF No. 1, PageID.4, 5.) Because Plaintiff's claims against Defendant Brown fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his claims against Defendant Brown are subject to dismissal for failure to state a claim.

Accordingly, all intended claims against Defendant Brown will be dismissed for failure to state a claim.

## V. Claims Against Defendants Koster and Reed

### A. Interference with Access to the Court Claims—Defendants Koster and Reed

Plaintiff alleges that the filing fees for two lawsuits Plaintiff sought to file were not immediately processed and that Defendant Reed refused to return Plaintiff's documents related to a lawsuit he had filed. (Compl., ECF No. 1, PageID.3–5.) The Court construes these allegations as raising interference with the right to access the courts claims.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to nonfrivolous pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992). In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost

remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

As an initial matter, many of Plaintiff's factual allegations about the actions that interfered with his right to access the courts attribute the actions to "the business office" and "the mail room." (Compl., ECF No. 1, PageID.3.) As discussed above, Plaintiff cannot bring a claim against Defendants "ICF Mail Room" or "ICF Business Office." Additionally, Plaintiff attributes conduct related to the interference with his right to access the courts to individuals who are not parties to this case. (*See id*., PageID.3, 4.) These allegations regarding the conduct of nonparty individuals are insufficient to show that Defendants Reed or Koster were personally involved in the alleged violation of Plaintiff's constitutional rights.

The Court addresses Plaintiff's interference with the right to access the courts claims against Defendants Koster and Reed below.

**1. Claims Against Defendant Koster**

Plaintiff alleges that Defendant Koster sent a check for $405 for the filing fee in a United States District Court case that Plaintiff had filed. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that Defendant Koster sent a $20 check for the filing fee for a case in the Ingham County Circuit Court that Plaintiff had filed. (*Id.*) Plaintiff alleges that these payments were not initially processed; however, as explained below, Plaintiff's allegations do not show that Defendant Koster interfered with Plaintiff's access to the court. Instead, Plaintiff's allegations show that Defendant Koster helped facilitate Plaintiff's access to the court.

Plaintiff alleges that, initially, "the business office and Account Teck [we]re not processing [his] filing fee for $405.00 and $20.00." (Compl., ECF No. 1, PageID.3.) Even if the Court generously construes Plaintiff's reference to "Account Teck" as referring to Defendant Koster, Plaintiff's allegations do not show that Defendant Koster violated Plaintiff's First Amendment

right to access the court. Instead, Plaintiff's complaint makes clear that the filing fee in both cases was eventually paid, suggesting that the payments were processed by Defendant Koster, as Plaintiff had sought to have happen. (*Id.*) Plaintiff also acknowledges that he received a kite response from "the Business Office" that noted that the checks had been mailed and no deadlines were missed. (*Id.*)

Based on the facts alleged by Plaintiff, he has not alleged that he suffered an actual injury to nonfrivolous litigation, *see Lewis*, 518 U.S. at 349, and Plaintiff does not identify any "lost remedy" as a result of the actions of the "Account Teck." *See Christopher*, 536 U.S. at 416. In fact, Plaintiff's complaint indicates that he did not incur any injury to either of the identified cases.

Accordingly, Plaintiff has failed to state an interference with the right to access the courts claim against Defendant Koster.

**2. Claims Against Defendant Reed**

**a. Claims Regarding Filing Fees**

Plaintiff alleges that on January 7, 2025, he "started sending several kites to [Defendants] Reed, Business Office, and Mail Room" about why his legal mail and filing fee had not been processed. (Compl., ECF No. 1, PageID.3.) Plaintiff's complaint does not indicate whether Plaintiff received a response from Defendant Reed or anyone else. (*See id.*)

As discussed above, Plaintiff's complaint suggests that the filing fees were paid and no deadlines were missed. (*Id.*) Therefore, Plaintiff has not alleged that he suffered an actual injury to nonfrivolous litigation as a result of any delay in the submission of the filing fees. *See Lewis*, 518 U.S. at 349.

Additionally, any response, or lack thereof, to Plaintiff's kite from Defendant Reed, would not show that Defendant Reed was liable for any interference with Plaintiff's right to access the court based on the processing of the filing fees. Government officials may not be held liable for

the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee* [*v. Luttrell*], 199 F.3d [295,] 300 [(6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Plaintiff's complaint only alleges that he sent a kite to Defendant Reed regarding this issue. (Compl., ECF No. 1, PageID.3.) Plaintiff's complaint does not contain any indication that Defendant Reed implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct of others.

Accordingly, Plaintiff has not shown that Defendant Reed interfered with Plaintiff's right to access the court in this circumstance.

**b. Claims Regarding Withholding of Documents**

Additionally, Plaintiff alleges that he gave Defendant Reed certain original documents so that a "legal writer" could assist Plaintiff with drafting a brief. (*Id*., PageID.5.) Defendant Reed

later told Plaintiff that he would only give Plaintiff his original documents back "after your deadline is over" and that Plaintiff would "never get any legal writer assistance" while he was at ICF. (*Id.*) Plaintiff alleges that these documents pertained to "Case # 24-1039-AA Divone Rice v. MDOC." (*Id.*)

Again, Plaintiff does not allege any *facts* to show that he suffered an actual injury to nonfrivolous litigation as a result of Defendant Reed's conduct. *See Lewis*, 518 U.S. at 349. Plaintiff also does not identify any "lost remedy" as a result of Defendant Reed's actions. *See Christopher*, 536 U.S. at 416. Therefore, Plaintiff has failed to state an interference with the right to access the court claim against Defendant Reed.[2]

### B. First Amendment Legal Mail Interference Claims—Defendants Koster and Reed

Plaintiff alleges that his legal mail was opened outside of his presence on several occasions between February 12, 2025, and August 12, 2025. (Compl., ECF No. 1, PageID.4.)

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard than those governing general mail. *See id*. at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" related to his legal

[2] Plaintiff also asserts that he was deprived of due process. (Compl., ECF No. 1, PageID.5.) The Court construes this claim as referring to Plaintiff's allegations regarding the interference with his right to access the court. To the extent that Plaintiff intended to raise a different claim under the Fourteenth Amendment Procedural Due Process Clause, Plaintiff has failed to allege any facts to show that any of the named Defendants committed a violation of Plaintiff's Fourteenth Amendment rights.

rights and concerns itself implicates a fundamental right. *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996). Courts have, therefore, extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff*, 418 U.S. at 576–77).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Sixth Circuit Court of Appeals has looked to the definition in the Michigan Administrative Code when considering whether mail sent to or from a prisoner incarcerated with the MDOC is "legal mail." *See, e.g.*, *Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) (noting that the "Michigan Administrative Code defines 'legal mail' as correspondence with courts, attorneys, public officials, the office of the legislative corrections ombudsman, the department of correction's central office staff, and staff of the institution in which the prisoner is incarcerated. See Mich. Admin. Code R. 791.6603(7) (Nov. 15, 2008)"); *Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) (looking to the Michigan Administrative Code for the definition of "legal mail" in Michigan). Moreover, "the determination of whether mail is considered legal mail depends not only on the nature of the sender, but on the appearance of the mail [as well as] the nature of the contents." *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 708 (W.D. Mich. 2020) *aff'd* No. 20-1389, 2021 WL 5352809, at *2 (6th Cir. Jun. 9, 2021) (noting that "the mail must be 'properly and clearly marked as legal materials.'.... [W]hile the envelope states that it is confidential, it was not, as the district court held, 'clearly marked as legal mail,' nor did it have the Commission's name on it or other salient information, such as 'the name and bar number of a licensed attorney'").

Plaintiff alleges that he received "legal mail" that had been opened outside of Plaintiff's presence on eight occasions between February 12, 2025, and August 12, 2025. (Compl., ECF No. 1, PageID.4.) Plaintiff alleges that this mail was sent from the Michigan Department of Civil rights, the United States District Court, Michigan Attorney General Dana Nessel, and the "Ingham County Circuit Court." (*Id.*) Even assuming without deciding that this mail was properly characterized as "legal mail," Plaintiff has not shown that Defendants Koster or Reed violated Plaintiff's constitutional rights in the handling of that mail.

Plaintiff alleges that this legal mail was delivered by nonparties Sergeant Unknown Rosenberger, Sergeant Unknown Smith, Sergeant Unknown Jenkins, Sergeant Unknown Plowman, Sergeant Unknown Higgins, and an unknown sergeant. (*Id.*) Plaintiff's complaint does not contain any factual allegations that indicate that Defendants Koster or Reed were involved in the alleged interference with Plaintiff's legal mail. (See *id.*, PageID.3–5.) The allegations against nonparty individuals are insufficient to show that Defendants Koster or Reed were personally involved in the alleged interference with Plaintiff's legal mail.

Additionally, Plaintiff alleges that nonparty Higgins said that Plaintiff's legal mail was already opened when he received it "from the mail room staff[.]" (*Id.*, PageID.4.) But this vague reference to "mail room staff" is insufficient to establish that Defendants Koster or Reed were personally involved in the alleged violation of Plaintiff's constitutional right. *See Boxill*, 935 F.3d at 518.

Accordingly, Plaintiff has failed to state a claim of First Amendment mail interference against Defendants Koster and Reed.

### C. First Amendment Retaliation Claim—Defendant Reed

Plaintiff alleges that on January 14, 2025, he gave Defendant Reed original documents relating to a lawsuit so that a "legal writer" could assist Plaintiff with writing a brief. (Compl.,

ECF No. 1, PageID.5.) Plaintiff alleges that two days later, Defendant Reed told Plaintiff that he would only return these documents after the "deadline is over," and that "this should be a lesson to stop trying to sue MDOC." (*Id.*) Plaintiff also alleges that Defendant Reed said that he would make sure that Plaintiff never received any assistance from a legal writer while he was at ICF. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this early stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff has by no means proven his First Amendment retaliation claim against Defendant Reed, the Court will not dismiss that claim at this time.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Brown, Koster, "ICF Mail Room," and "ICF Business Office" will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendant Reed: First Amendment and Fourteenth Amendment interference with access to the courts claim and First Amendment

mail interference claim. Plaintiff's First Amendment retaliation claim against Defendant Reed remains in the case.

An order consistent with this Opinion will be entered.

Dated: September 18, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE